UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICKY L. BRIGANCE,

Plaintiff(s),

v.

STATE OF NEVADA, et al.,

Defendant(s).

Case No. 2:17-CV-250 JCM (GWF)

ORDER

Presently before the court is defendants' Las Vegas Metropolitan Police Department ("LVMPD"), Ryan Courtney ("Courtney"), and Benjamen Cobb's ("Cobb") motion for summary judgment. (ECF No. 34). Plaintiff Ricky L. Brigance ("Brigance") filed a response (ECF No. 35), to which defendants replied (ECF No. 36).

**I. Facts**

On May 24, 2016, at or around midnight, plaintiff and his friend Rayshawn Wesley ("Wesley") were driving in plaintiff's vehicle. (ECF No. 34). Plaintiff traveled eastbound on West Lake Mead Boulevard, turned north onto Revere Street, and eventually made a left onto Bartlett Avenue. *Id.* Both Revere and Bartlett are in residential neighborhoods with 25 miles per hour speed limits. *Id.* This route crossed from Las Vegas to North Las Vegas and then back into Las Vegas within four city blocks. *Id.*

As plaintiff turned from West Lake Meade onto Revere, Courtney and Cobb, both LVMPD officers, were travelling northbound on H Street. *Id.* Both officers were wearing body worn cameras ("BWC"). *Id.* H Street turns into Revere after the West Lake Meade intersection. *Id.* As the defendant officers approached the West Lake Meade/Revere intersection, the officers observed plaintiff's vehicle accelerate causing the vehicle to slide sideways. *Id.* at 4. Plaintiff

James C. Mahan
U.S. District Judge

was unaware of how fast he was traveling and recalls his vehicle performing a "slight slide." *Id.* at Ex. A 21-22.

After plaintiff turned onto Bartlett, Cobb's BWC shows that plaintiff's car accelerated out of defendant officers' field of vision. *Id.* at Ex. D. Cobb then initiated his overhead lights and began to pursue plaintiff. *Id.* at 5. Cobb's BWC shows that he was required to travel at speeds as high as 60 miles per hour to regain sight of plaintiff's vehicle. *Id.* at Ex. D.

Defendant officers stopped plaintiff's vehicle on Bartlett, approximately two houses away from plaintiff's residence. (ECF No. 25). Plaintiff immediately pulled his vehicle over and remained compliant and non-resistant. *Id.* Cobb approached plaintiff's driver's side window holding a flashlight. (ECF No. 34). He stated that the basis for the arrest was plaintiff speeding on H Street and asked if plaintiff had any firearms in the vehicle. *Id.* Plaintiff truthfully answered that he had a 9 mm handgun under his seat and thereafter complied with Cobb's instruction to exit the vehicle. *Id.* Cobb searched the vehicle and located the gun. *Id.* It was subsequently determined that plaintiff was the lawful owner of the firearm. (ECF No. 25).

Upon finding the licensed firearm in plaintiff's car, Courtney believed that plaintiff was violating a North Las Vegas ordinance prohibiting the possession of any dangerous or deadly weapon in an automobile, truck, motorcycle, or other type of vehicle. (ECF No. 34 at 3) (citing North Las Vegas Code § 9.32.080). However, Courtney was unaware that the city ordinance had been repealed. (ECF No. 34). Believing that the ordinance was still valid, defendant officers told plaintiff that he was being arrested for violating the firearm ordinance. *Id.*

Plaintiff and Wesley were then arrested and transported to Las Vegas city jail. *Id.* Wesley was arrested on an unrelated outstanding warrant. *Id.* After arriving at the city jail, Courtney learned that the North Las Vegas firearm ordinance had been repealed. *Id.* The defendant officers then changed plaintiff's charge to reckless driving in violation of Nev.Rev.Stat § 484B.653. *Id.* (citing Nev.Rev.Stat § 484B.653).

As defendant officers inquired about the city ordinance, plaintiff went through the standard booking process at the city jail. *Id.* A corrections officer later informed plaintiff that

his arrest was for reckless driving instead of violating the firearm ordinance. *Id.* The officer did not explain why the charges against plaintiff were changed. (ECF No. 25).

On June 23, 2016, the reckless driving charge against plaintiff was dismissed by the municipal court. *Id.*

On January 1, 2017, plaintiff filed a complaint (ECF No. 1), which was later amended on June 8, 2017 (ECF No. 25). Plaintiff alleges five claims for relief in his amended complaint: (1) civil rights violations under 42 U.S.C. § 1983 against all defendants; (2) false arrest against all defendants; (3) false imprisonment against all defendants; (4) negligent hiring, training, supervision, and retention against LVMPD; and (5) intentional infliction of emotional distress against all defendants.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Moreover, when video evidence is available and blatantly contradicts the non-moving party's version of events, video evidence is preferred. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## III. Discussion

### a. Civil rights violations under 42 U.S.C. § 1983

Section 1983 is not itself a source of substantive rights, but rather is a procedural vehicle that vindicates federal rights elsewhere conferred. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To make out a prima facie case under § 1983, the plaintiff must prove that the defendant (1) acted under color of state law and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

The defendants do not dispute that they acted under color of state law as LVMPD officers. (ECF No. 34 at 10). Therefore, the court will determine whether plaintiff's constitutional rights were violated. *See Albright*, 510 U.S. at 271.

#### i. Fourth Amendment challenge

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Fourth Amendment challenges involve an objective inquiry. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The question is would "the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 21-22.

A traffic stop constitutes a seizure. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that an automobile stop is subject to constitutional imperative that it not be unreasonable under the circumstances). Therefore, an officer must have probable cause before detaining a motorist. *See id.*

In determining whether an officer has probable cause at the time of an arrest, the court considers "whether at that moment the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 953-54 (9th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause demands factual specificity and must be judged according to an objective standard." *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010). Moreover, the Supreme Court recently held that probable cause

is "not a high bar" and depends on the "totality of the circumstances." *See District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018).

Furthermore, when the underlying facts claimed to support probable cause are not in dispute, whether those facts constitute probable cause is an issue of law. *See Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (holding that the inquiry is whether the rule of law as applied to the established facts is or is not violated). Additionally, a police officer has immunity if the officer arrests with probable cause. *Hutchinson v. Grant*, 796 F.3d 288, 290 (9th Cir. 1986).

Here, although plaintiff was initially told that he was being arrested under the firearm ordinance, plaintiff was arrested for the original reckless driving offense. (ECF No. 34, Ex. B, C). Therefore, the inquiry is whether the defendant officers had the requisite probable cause to arrest plaintiff for reckless driving in violation of Nev.Rev.Stat § 484B.653(1)(a). *See Edgerly*, 599 F.3d at 954 (holding that an officer can have probable cause for any criminal offense, regardless of the stated reason for the arrest). The statute prohibits a person from driving "a vehicle in willful or wanton disregard of the safety of persons or property." Nev.Rev.Stat. § 484B.653(1)(a).

Although plaintiff disputes that he was driving recklessly and speeding in a residential neighborhood in his response (ECF No. 35), plaintiff testified that he did not know his speed and does not dispute that he was speeding. (ECF No. 34, Ex. A at 21-22). Furthermore, plaintiff acknowledged that he noticed a "slight slide" into the intersection as he turned his vehicle. (ECF No. 34, Ex. A at 21). Defendants contend that the officers' body camera footage establishes that plaintiff "fishtailed" through the intersection and reached speeds in excess of 50 miles per hour in a residential neighborhood. (ECF No. 34, Ex. D). The video also shows that Cobb drove 60 miles per hour for three-quarters of a mile before stopping plaintiff. *Id.*

Plaintiff argues that the body camera footage is incomplete because both defendant officers turned off their body cameras in violation of standard officer protocol. (ECF No. 35). Plaintiff contends that the defendants' failure to comply with body camera protocol creates a material issue of fact as to whether exculpatory evidence was withheld that could confirm that the traffic stop was without probable cause. *Id.* However, plaintiff does not dispute the accuracy of the driving captured on the unedited body camera video, thereby supporting the validity of the underlying

footage. (ECF No. 35); *see Scott*, 550 U.S. at 378 (holding that video evidence is preferred when there are no allegations that the videotape was doctored or altered, nor any contention that what it depicts differs from what actually happened).

Uncontroverted body camera footage from the defendant officers and plaintiff's testimony establish undisputed facts surrounding the traffic stop and arrest. (ECF Nos. 34, 35). Therefore, probable cause is a question of law. *See Ornelas*, 517 U.S. at 696-97. Because plaintiff was driving at speeds that caused him to "slide" into an intersection while turning his vehicle, defendant officers had probable cause to arrest plaintiff under Nev.Rev.Stat § 484B.653(1)(a). *See United States v. Reeves*, 798 F.Supp 1459, 1464 (E.D. Wash. 1992) (holding that driving 20 miles per hour over the speed limit and weaving in and out of lanes without signaling is indicative of a willful disregard for the safety of others); *see also Wesby*, 138 S.Ct. at 586 (holding that probable cause is not a high bar).

Plaintiff's contention disputing whether there was "probable cause for a traffic stop or simply a traffic citation" involves a discretionary issue rather than a probable cause issue. (ECF No. 35 at 3); *see* Nev.Rev.Stat § 484A.730 (a police officer has the option to give a citation or perform a custodial arrest of any individual stopped for any violation of chapters 484A to 484E, inclusive). Even though plaintiff disagrees with his arrest for reckless driving, this does not necessarily implicate probable cause. *See* Nev.Rev.Stat § 484A.730.

Plaintiff has failed to present "specific facts showing that there is a genuine issue for trial." *See Lujan*, 497 U.S. at 888. Accordingly, the court will grant defendants' motion for summary judgment on plaintiff's 42 U.S.C. § 1983 civil rights claims. *See Hutchinson*, 796 F.3d at 290.

**ii. Qualified immunity**

Defendants alternatively argue that they are entitled to qualified immunity if the court concludes that summary judgment is not appropriate on plaintiff's substantive § 1983 civil rights claims. (ECF No. 34 at 15). Because this court concludes that defendants are entitled to summary judgment on plaintiff's § 1983 civil rights claims, qualified immunity will not be addressed.

. . .

. . .

**b. False arrest and false imprisonment**

False arrest and false imprisonment claims are evaluated under the reasonableness standard of the Fourth Amendment. *See Luchtel v. Hagemann*, 623 F.3d 975, 984 (9th Cir. 2010) (affirming summary judgment on false arrest claim because the police had probable cause); *see also United States v. Manzo-Jurado*, 457 F.3d 928, 934 (9th Cir. 2006) (holding that reasonable suspicion constitutes legal justification for the restraint). Therefore, probable cause is an absolute defense to false arrest and false imprisonment claims. *See Luchtel*, 623 F.3d at 984.

Plaintiff asserts that defendants violated Nevada state law by falsely arresting and imprisoning him. (ECF No. 25). As previously stated, the court concludes that defendant officers had probable cause to stop and arrest plaintiff for reckless driving. Accordingly, the court will grant defendants' motion for summary judgment on plaintiff's false arrest and false imprisonment claims. *See Luchtel*, 623 F.3d at 984.

**c. Negligent hiring, training, supervision, and retention**

In a negligence action, the plaintiff must demonstrate "(1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach was both the actual and proximate cause of the plaintiff's injury; and (4) that the plaintiff was damaged." *Belch v. Las Vegas Metro Police Dep't*, 2012 WL 4610803, at *11 (D. Nev. 2012) (quoting *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992)).

Plaintiff contends that LVMPD failed to adequately hire, train, supervise, and retain the defendant officers. (ECF No. 25). Plaintiff supports these claims by stating that "the officers admit they violated department protocol, that they did not know the law, and that they made a series of legal errors which resulted in Mr. Brigance's arrest." (ECF No. 35 at 9). However, plaintiff has failed to produce any evidence to substantiate these claims and has failed to establish how these accusations relate to his negligence cause of action against LVMPD. (ECF Nos. 25, 35, 36). Conclusory accusations that are unsupported by factual evidence cannot avoid summary judgment. *See Taylor*, 880 F.2d at 1045. Accordingly, the court will grant defendants' motion for summary judgment on plaintiff's negligent hiring, training, supervision, and retention claims.

. . .

**d. Intentional infliction of emotional distress**

To prevail on an intentional infliction of emotional distress claim, plaintiff must establish "(1) that the defendants' conduct was extreme and outrageous; (2) that defendants either intended or recklessly disregarded the causing of emotional distress; (3) that plaintiff actually suffered severe or extreme emotional distress; and (4) that defendants' conduct actually or proximately caused the distress." *Nelson v. Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).

Here, plaintiff alleges that defendants' "bad faith actions" in falsely arresting him caused severe emotional distress. (ECF No. 25 at 13). However, plaintiff fails to present any evidence of "extreme or outrageous conduct" or that defendants either "intentionally or recklessly disregarded the causing of distress." *See Nelson*, 665 P.2d at 1145. Accordingly, the court will grant defendants' motion for summary judgment on plaintiff's intentional infliction of emotional distress claim. *See Celotex*, 477 U.S. at 323-24 (holding that the purpose of summary judgment is to isolate and dispose of factually unsupported claims).

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 34) be, and the same hereby is, GRANTED.

The clerk shall enter judgement accordingly and close the case.

DATED June 5, 2018.

James C. Mahan
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge